RICKY N. ALEXANDER,

        Plaintiff,

        v.                                       Case No. 22-C-750

JEANIE M. KRAMER and
SANDRA L. MCARDLE,

        Defendants.

## DECISION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

        Plaintiff Ricky N. Alexander, currently a prisoner serving a state criminal sentence, filed this action under 42 U.S.C. § 1983 against Nurse Practitioners Sandra L. McArdle and Jeanie M. Kramer, alleging that they subjected him to cruel and unusual punishment in violation of his civil rights under the Eighth Amendment by their deliberate indifference toward his serious medical needs. In particular, Alexander asserts that the defendants failed to properly treat his hematuria and to diagnose a cancerous bladder tumor. The defendants seek summary judgment on the ground that Alexander failed to properly exhaust his administrative remedies prior to bringing this lawsuit. The following background information is taken from the parties' proposed findings of fact.

## BACKGROUND

        From April 23, 2013, until April 4, 2019, Alexander was housed at the Wisconsin Secure Program Facility (WSPF) in Boscobel, Wisconsin. In 2015, Nurse Practitioner McArdle became aware that Alexander had blood in his urine, a condition called hematuria. The condition seemed to return every six to seven months. McArdle prescribed Tamsulosin for Alexander's condition

but never referred him for diagnostic testing outside the institution. Alexander never filed complaints about McArdle's treatment of his condition during his time at WSPF. While housed at WSPF, Alexander filed seven inmate complaints through the Inmate Complaint Review System (ICRS), none of which related to McArdle's treatment of his hematuria. McArdle Proposed Findings of Fact (MPFOF) ¶ 9, Dkt. No. 31.

On April 4, 2019, Alexander was transferred to the Racine Correctional Institution (RCI). *Id.* ¶ 2. Once he was transferred, McArdle no longer provided Alexander with any care. *Id.* ¶ 3. Instead, Nurse Practitioner Kramer provided treatment for Alexander's hematuria while he was housed at RCI. His condition worsened at RCI, and on September 2, 2019, he was transferred to the Emergency Room of a local hospital because of nonstop bleeding. The attending physician discovered a four centimeter cancerous tumor in Alexander's bladder that was surgically removed on September 3, 2019.

On September 5, 2019, Alexander filed inmate complaint RCI-2019-16670. *Id.* ¶ 8. In this complaint, Alexander alleged that he had been complaining about having blood in his urine to WSPF medical staff and then to RCI medical staff for the past two years. He essentially claims that despite his complaints to the medical staffs of the two institutions, he was never referred to an outside physician for diagnostic testing. As a result, he claims, a cancerous tumor continued to grow to the point that it caused constant bleeding. Dkt. No. 26-2 at 9.

On October 14, 2019, the Institution Complaint Examiner (ICE) rejected the complaint as untimely because it was not filed within 14 days of the occurrence giving rise to the complaint. Kramer Proposed Findings of Fact (KPFOF) ¶ 9, Dkt. No. 25. The ICE explained that the purpose of the Inmate Complaint Review System (ICRS) is to investigate and review issues as they occur and that Alexander should have filed an inmate complaint immediately, at both WSPF and RCI, if

he felt that he was not receiving proper medical care. Dkt. No. 26-2 at 2. The ICE concluded that filing a complaint two years later in regard to care received over the past 2 years at two different institutions "is outside of the purpose of the ICRS." *Id.* If Alexander has complaints about recent medical care and treatment, the ICE noted, he should file another complaint consistent with the scope and purpose of the ICRS. *Id.*

Alexander appealed the "rejected" inmate complaint on October 16, 2019, reiterating that no one at either institution ordered testing and that they "allowed [the cancerous tumor] to grow for 4 years." *Id.* Alexander argued that he did not know that he had a cancerous tumor until it was removed on September 2, 2019, and that he immediately filed an inmate complaint thereafter. *Id.* at 11. On November 5, 2019, the reviewing authority determined that the inmate complaint was appropriately rejected. *Id.* at 5.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence

of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

The Prison Litigation Reform Act, which applies to this case because Alexander was a prisoner when he filed his complaint, provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well established that the exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "A prisoner's failure to exhaust administrative remedies before filing a claim constitutes an affirmative defense, . . . [so] defendants have the burden of pleading and proving the defense." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (citations omitted).

Wisconsin established the ICRS as the primary administrative remedy for Wisconsin prisoners. *See* Wis. Admin. Code § DOC 310.04. Under the ICRS, Wisconsin prisoners can file complaints about correctional staff or the conditions of the institutional environment. *See id.* § DOC 310.04. The subject of each complaint must clearly contain only one identified issue. *Id.* § DOC 310.07(5).

In addition to following the designated process pursuant to § DOC 310.07(1), the complaint must be timely. *Id.* § DOC 310.07(2). A complaint must be filed with the ICE within
4

14 days after the occurrence giving rise to the complaint. *Id.* "At the discretion of the ICE, a later complaint may be accepted for good cause." *Id.* § DOC 310.07(2). But an inmate must "request to file a late complaint in the written complaint and explicitly provide the reason for the late filing." *Id.* The ICE reviews and investigates the inmate complaint at the institution level, then rejects or recommends action to a reviewing authority, who in turn either dismisses or affirms the complaint. *Id.* §§ DOC 310.10(9), 310.11(2). The reviewing authority's decision is final. A prisoner may appeal the reviewing authority's decision within 14 days of the date of the decision to the Correction Complaint Examiner (CCE). *Id.* § DOC 310.12(1). After reviewing an appeal, the CCE recommends a decision to the Department of Corrections Secretary, who adopts or rejects the recommendation. *Id.* §§ DOC 310.12; DOC 310.13. The failure to properly exhaust each step of the grievance process before filing a lawsuit constitutes a failure to exhaust administrative remedies. *Pozo*, 286 F.3d at 1025.

Defendants assert that Alexander failed to exhaust his administrative remedies because he did not submit any timely complaints about their conduct in failing to treat his hematuria. Alexander's only complaint relevant to this action, RCI-2019-16670, was filed on September 5, 2019. In his complaint, Alexander alleged that the defendants were deliberately indifferent to his condition over a two-year period at two different institutions. The ICE rejected the complaint as untimely because it was not filed within 14 days of the occurrence giving rise to the complaint. In the defendants' view, the ICE's decision was proper. Alexander's claim is that the defendants were deliberately indifferent to his medical condition, i.e., blood in his urine, and failed to promptly refer him to a specialist for diagnostic testing. While Alexander may not have known he had a tumor until September 2, 2019, the defendants note that he knew he had blood in his urine as early as October 2015. If, as he alleges, Nurse Practitioners McArdle and Kramer were acting with

5

deliberate indifference to his ongoing need for treatment, he could have filed a complaint within 14 days of such deliberate indifference so the situation could be promptly investigated and remedied. That is, after all, the purpose of having administrative remedies.

But Alexander claims he did not know that the defendants had acted with deliberate indifference to his medical condition until his condition deteriorated to the point where the bleeding became constant and he required hospitalization. He trusted that he was being provided proper care. Absent knowledge that the treatment provided was wholly ineffective, Alexander contends he could not be expected to file an inmate complaint. *See Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980) ("Until the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury,' the statute of limitations does not commence to run." (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979))).

Alexander also contends that the defendants' violation was an ongoing violation that continued until he finally received the emergency care he required on September 3, 2019. In support of the latter argument, Alexander cites *Heard v. Sheahan*, in which the Seventh Circuit reversed the district court's dismissal of a similar § 1983 claim for deliberate indifference to serious medical needs. 253 F.3d 316 (7th Cir. 2001).

In *Heard*, an inmate brought a § 1983 action against county jail officials alleging cruel and unusual punishment by denying him medical care for his hernia. The plaintiff had been held in the Cook County Jail awaiting trial from January 1994 until sometime after June 6, 1996. During his confinement in the jail, he developed a prominent bulge in his groin area that he suspected was a hernia. After months of unsuccessfully demanding medical attention, he was finally examined by a doctor who diagnosed a ruptured hernia and recommended surgery. When the jail refused to act on the recommendation, the inmate sued, but he did not file his lawsuit until June 5, 1998. *Id.*

6

at 317. The district court dismissed the suit on the ground that it was barred by Illinois' two-year statute of limitations. The Court of Appeals for the Seventh Circuit reversed. In so ruling, the Court of Appeals noted that the district court thought the date of accrual was when the plaintiff discovered he had a medical problem that required attention. *Id.* at 318. While that would be true if the plaintiff's claim was for medical malpractice, the court observed that the plaintiff's claim was that the defendants subjected him to cruel and unusual punishment by refusing to treat his condition. *Id.* As the court explained, this meant that the plaintiff's claim was ongoing and continuous:

> This refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail. Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. A series of wrongful acts creates a series of claims.

*Id.*

Alexander argues that in this case, as in *Heard*, the defendants' failure to effectively treat his condition was an ongoing violation that continued until he finally received effective treatment on September 3, 2019. "Continuing" violations of this kind allow a plaintiff to "reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Id.* at 319. Doing so here, Alexander contends, allows him to reach all the way back to the alleged deliberate indifference of both Nurse Practitioners McArdle and Kramer to his serious medical need.

The defendants argue that *Heard* is inapposite because the issue in that case was when a claim accrues for purposes of determining whether it is barred by the statute of limitations. But it is unclear why the analysis should differ. If a violation is considered continuing and/or

7

undiscoverable for statute of limitations purposes, why should it be treated differently for purposes of determining the timeliness of complaints seeking administrative remedies? It would hardly be fair to hold that the time within which a prisoner must file a grievance to exhaust his administrative remedy can run before the prisoner even knows he has a claim. Nor would it be good policy to require inmates to file grievances every time the medical treatment provided them is not immediately effective. Under the defendants' interpretation, inmates would have to file a grievance simply to preserve a claim on the off chance that it later becomes apparent that their constitutional rights were violated.

For these reasons, the court concludes that the defendants' motion for summary judgment for failure to exhaust administrative remedies should be denied. There remains a serious question whether the plaintiff can establish deliberate indifference to his condition on the part of either defendant, given the relative infrequency of his symptoms. But that is an issue for further motion practice or for trial. Because Alexander's administrative complaint was timely filed, the case will continue.

## CONCLUSION

For these reasons, Kramer's motion for summary judgment (Dkt. No. 23) and McArdle's motion for summary judgment (Dkt. No. 29) are **DENIED**. The stay previously entered is hereby vacated and the parties may continue discovery on the merits until January 10, 2024. The deadline for dispositive motions on the merits shall be February 10, 2024.

**SO ORDERED** at Green Bay, Wisconsin this <u>10th</u> day of July, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge